Good morning, Your Honors. May it please the Court and counsel. My name is Tim Gabrielson. I'm here from the Federal Public Defender's Office in Tucson, and I represent Chris Spreitz in this appeal of the denial of habeas corpus relief in a capital case. A month ago, this Court ordered the parties to brief what's come to be called a causal nexus issue that the Court has seen quite a few of in the last couple of years. And if it pleases the Court, I'd like to lead with that argument this morning. In Eddings v. Oklahoma, the U.S. Supreme Court instructed us that with respect to the proffer of mitigating evidence, courts are not free as a matter of law to decline to consider that evidence. They can consider it and find it wanting as a matter of fact, but as a matter of law, they can't disregard it. This Court has had two fairly recent cases before it in which it has granted habeas relief where on facts that we submit are very similar to what happened in Mr. Spreitz's case, sentencing courts, and, of course, this was bench sentencing in Arizona before Ring v. Arizona was decided. But in a couple of cases in Stiers and an area in Williams, this Court has reversed where judges make comments very similar to the comments that were made by the sentencing court in Mr. Spreitz's case. Mr. Gabrielson, can I direct you to the Arizona Supreme Court? Because it's my understanding under Arizona law that it must conduct a de novo independent review of that sentencing determination. Is that correct? That's correct, Your Honor. And that was done here, was it not? Yes, it was. Okay. Can you point to me in the Federal habeas petition or the State post-conviction relief petition where there is a specific allegation that the Arizona Supreme Court violated Federal law in this regard? In the you're asking if it's in the post- I want to know if the claim is before us, because I can't find any reference to an attack on the Arizona Supreme Court's de novo independent determination. I think, Your Honor, the claim as it's phrased in both the post-conviction court and in Federal habeas is a claim of ineffective assistance because the State trial court failed to comply with the requirements of Eddings. No argument there. But do you understand my question? No, I do. And I think that the decisions of three levels of Arizona State courts have to be considered here because, as we know from Ilse v. Nutemaker and from this Court's decisions in Miles and Poison and some other cases, we look to the last reason judgment of the Arizona courts in determining whether the defendant, the petitioner, is entitled to habeas relief under the AEDPA. And so, and I'm not being at all evasive, and I think I'll wrap all this together. I'm still waiting for an answer to my question.  No, the claim, no, the last reason decision, I would respectfully disagree and say it's actually the State post-conviction court, Arizona, which decided the ineffective assistance of appellate counsel claim. The case went up on review to the Arizona Supreme Court in a petition for review, and that court, it had to consider whether, in Arizona cases, claims are procedurally defaulted if they're not raised on direct appeal, and the court did that. The Arizona Supreme Court did that, and in the last paragraph of its order, it indicated that it did not disagree with any of the substantive rulings made by the State post-conviction court that dismissed the claim of ineffective assistance of direct appellate counsel. Has the State ever suggested that this causal nexus claim is not before the courts? No, Your Honor. I don't believe they have. Directly or through the ineffective assistance of appellate counsel? Correct, Your Honor. Directly or through the ineffective assistance? Which version of it has not been objected to? The causal nexus claim, as it has been raised in a couple of other cases, including the procedural posture of Stiers and Ariane Williams, it's not in that posture. It's in the posture of ineffective assistance of direct appellate counsel. And that's the posture in which you're arguing it, and that's the posture in which you say it has not been objected to? That's correct, Your Honor. The appellee's brief addresses it straightforwardly on the substance of the Strickland claim, including the deficient performance prong and the prejudice prong of Strickland. Well, assuming that it is not procedurally defaulted, then, can you direct me where the Arizona Supreme Court ever states that it refused to consider evidence of alcoholism or drug abuse? Yes. Well, in this particular as Your Honors are aware, there are cases that have come before the Court where the historical practice has been before the Court. We submit in our papers that the statements of the three levels of Arizona courts are clear that the proffered mitigation was not considered here. With respect to Judge Tallman's question, the Arizona Supreme Court, and this portion of the relevant portion, I think, of the opinion is reproduced at page 5 of the appellee's supplemental answering brief. The matter is quoted as indented and quoted here, but the relevant portion of this in response to Judge Tallman is that the Court said the record demonstrates defendants' long-time substance abuse problems. We note, however, that the defendants' general problems with substance abuse are not essential to our decision here. That, I think, is a clear statement that the Court is saying that the proffered mitigation, Mr. Sprites' proffered mitigation of historical alcohol and substance abuse is not to be considered. The Court then in the next sentence goes on to say that mitigation has to meet the requirements of what we in shorthand in Arizona call the G-1 statutory mitigating factor, and that is the capacity to appreciate wrongfulness of the conduct or to conform the conduct to the requirements of law. Those would be mental states that would attach during the commission of the crime and not the historical pattern of substance or alcohol abuse. But doesn't our case law say we have to find a clear indication that they refuse to consider it? I think this is that clear indication, Your Honor. But by saying it's not essential, that's not saying we won't consider it or it's irrelevant. I think it, when they say it's not essential, it is essential. It's contrary to Federal law because Eddings v. Oklahoma says that the courts have to, the sentencing court has to consider that. Why don't, why can't I read that as simply saying we just don't find it very persuasive given the weight of the aggravating factor, which, as I understand it here, was the cruelty that had been found from what Mr. Sprites did to the victim? The problem with the Court's language is it doesn't say that we weighed the evidence and found it to be wanting. It doesn't say that we're sympathetic to the evidence and find it wanting. It says that the class of evidence that Mr. Sprites has asked the Court to consider is not essential to our decision. The decision is whether there's an improper nexus requirement, and the Court's saying that there has to be one in order for it to consider this evidence to be mitigated. Well, I hear your argument, but then after the language that you just quoted to us, and I'm looking at 945 Pacific Report or 2nd at 1280, the Supreme Court says after weighing the mitigating circumstances both individually and cumulatively against the aggravating circumstances, the trial judge concluded the aggravator of a special cruelty outweighed all other circumstances and sentenced defendant to death. In our independent re-weighing of the aggravating and mitigating circumstances, we find the record provides no basis on which to alter the sentencing judge's decision. So why shouldn't I read that as an independent re-weighing by the Arizona Supreme Court, which included your client's argument that his longstanding alcoholism was a nonstatutory mitigating factor? Respectfully, Judge Tolman, it's precisely the same argument that the State made in Steyer's. And in the procurium opinion in Steyer's, this Court said that there are ways in which  I'm aware that the Arizona Supreme Court says in its independent review, and to some extent what the Arizona Supreme Court says is boilerplate. It appears in every one of our cases. We've considered all of the aggravating and mitigating evidence, and we find that the mitigation doesn't outweigh aggravation. However, that procurium opinion in Steyer's says that the statement that the Arizona Supreme Court made before it said it considered all the evidence was that there had to be a causal nexus. It said that because the evidence didn't go to the defendant's – there was no causal connection between the proffered mitigation and the commission of the crime, the Court would not consider that to be mitigating. So respectfully, in every one of our cases, the Arizona – usually the sentencing court and the State Supreme Court both say we've considered all the aggravating and mitigating evidence. The problem is that there's always this – and the procurium court used the conjunctive adverb, however, that separates the proffered mitigation, which is set forth in the sentencing court's decision or in the Arizona and Steyer's and the Arizona Supreme Court's decision to use a conjunctive adverb like however to say we can't consider  And that's exactly the same adverb. So is it we can't consider it or is it that because there is no causal connection here establishing a G1 statutory mitigating factor, we then give little weight to the non-statutory mitigating factor and we do not find that it is outweighing the aggravating factor? I think if the court at any point, and this is the sentencing court or the Arizona Supreme Court, if either of those courts at any point said something about weighing and considering Mr. Spryce's particular history of alcohol abuse and the tragic circumstances that attach to that from the age of 12 on to the commission of the crime at age 20 or 21, I think – I think we could reasonably say that the court considered the evidence as mitigation. In this case, it appears more like it did in Steyer's that the court simply sets forth the proffer of mitigating evidence and then says why it's not going to consider it with respect to the sentence imposed in this case. Is there any significance to the fact that in the immediate preceding paragraph before the one we've been discussing, the California – the Arizona Supreme Court is discussing the upbringing and says, although we recognize defendant's upbringing as a mitigating circumstance, we accord it little weight. And in the next paragraph is the one about the alcohol impairment or the alcohol addiction. I'm going to suggest, Judge Bernstein, it was true in this case and it's true in a lot of other cases that have come before the court, the Arizona courts bifurcate or split some of the categories of non-mitigating evidence. And with respect to substance abuse, as was true in Arian Williams and in this case, the court says that unless it meets the G1 mitigating factor, it's not mitigating at all. It's not – They put it the other way, i.e., in that instance, they specifically said that we're considering it but giving a little weight. But in the next paragraph, they didn't say that. And of course, you're correct, and I agree that that's exactly right. If they meant to give it weight, I think they would have, as I said to Judge Tallman a few minutes ago, I think if they meant to give it weight, they would have said we weigh it, we give it weight, we're sympathetic to it, we're empathetic. They would have said something to make – to make us think that they actually gave mitigating, non-statutory mitigating effect to the evidence. They also said we recognize remorse as a non-statutory mitigating factor later in the next paragraph. That's absolutely correct. I think where they – where they weigh the evidence, they say they weigh the evidence. And I think our problem here is when they say that the history of alcohol and substance abuse is inconsequential, it's – those are not terms that in the vernacular that these sentencing courts or we lawyers even use when we're arguing these death penalty cases. We use terms like weighing and assessing the weight of something, putting weight on one or the other sides of the scale. Because Arizona, as the Court's aware, is a weighing State. Every last sliver of mitigating evidence, defense counsel has to adduce that and put it on the scale or he risks the possibility that the sentencing courts could impose death. His lawyer did raise, as I read his sentencing memorandum, both the statutory and the non-statutory mitigation argument with regard to alcoholism and drug abuse, did he not? That's correct. And I believe that record is – I think it's in our excerpts. I think it's also in the record before the Court. So why shouldn't we treat this as we do consideration of district court rulings on 3553A factors in sentencing, that the district court's not required to tick off every one of the factors as long as we can tell from our review of the record that the information was before the Court and that it was considered? I think the problem here is that the sentencing court disavowed – disavowed the proffered non-statutory mitigation evidence. But is he more, like, inconsequential? I mean, to me, that sounds like we're just not giving it very much weight in comparison to what he did. I want to be very clear. It's the Arizona Supreme Court that called the – I'm sorry, the post-conviction court called the evidence inconsequential in keeping with the prior holdings of the court, is what the PCR court said. The Arizona Supreme Court said that the evidence was not essential to the decision. And the State, I think in the sentencing court, didn't use the words essential or inconsequential. The sentencing court, in consecutive paragraphs, set forth what the proffer was, but used the same conjunctive adverb that the per curiam court in Steyer said, signals that it's not considering the evidence. Used the word, however. The next paragraph, the court says, but again, I don't give that mitigating weight because there's no causal nexus to the crime. It doesn't meet the G1 factor, which is the evidence that impacts or implicates the defendant's mental state at the time of the crime. What relief are you seeking for this claim, on this claim? Habeas corpus relief. No, but what form of relief? Is he entitled to an entirely new sentencing hearing? Yes. Is he entitled? In Steyer's and in Williams, where there's been an imposition of a causal nexus requirement, this Court, in both those cases, has simply sent the case back. Has it ordered that the writ issue, and of course, then it's up to the State whether it's a conditional writ either the State can resentence or they can commute him to life. And even if we were to agree with you that there was causal nexus error here, we would still have to consider prejudice? That's a very good question, Judge Pius, and I think we attempt to answer that in the supplemental reply brief, and that is, under this Court's decisions in Steyer's and in Williams, the case has to be remanded for resentencing. That proves the Strickland prejudice prong. Because there's – if direct appellate counsel had raised the claim and the defendant were entitled to causal nexus relief, that relief is a new sentencing hearing. Or in Federal court, it's the requirement that the writ issue and then it's on the State to either resentence or impose a life sentence instead. But if this really turns on what sounds to me like a semantics attack on the words used by the Arizona Supreme Court, why couldn't we direct that the writ issue to the Arizona Supreme Court to simply reconduct its independent weighing and with appropriate instruction from us as to the Eddings error that you allege, and it would be performing exactly the same function that you say it erroneously performed without any need to reopen the record on sentencing? Well, I would say two things, Judge Tallman. The only area where the remedy you propose, that we have the State re-weigh, the State court re-weigh, is where a statutory aggravator is invalidated. In the other cases, as I said, in Steyer's and in Williams, where this Court has found a causal nexus here, the writ has issued, the Court did not give the Arizona Supreme Court an opportunity to correctly apply the law of Eddings to those cases. I mean, in this instance, well, I guess the problem is that the only attack now is on ineffective assistance for appellate counsel, because the trial court made the same mistake even more clearly, right? Absolutely. In consecutive paragraphs of the order. The limited nature of the current claim may mean that that error is not the one we're concerned with. In other words, it's true that the Arizona Supreme Court re-weighs, but still it would seem that the defendant would have, or the Petitioner would have the right to both levels of review, because he could be that the trial court, if he did it right, would conclude that he shouldn't get the death penalty. However, that's not what the attack is here. So maybe we are limited to the Arizona Supreme Court. I understand what you're saying, that doctrinally there's a difference between a pure causal nexus error and an error that's based on ineffective assistance for counsel. Right. In terms of the remedy you would get. But I'm not, and I don't believe that the State cited any cases for the proposition that that's true, that they require, the State courts require an opportunity to correct the error. In fact, the, in the State supplemental answering brief, there's no recognition that Arianne Williams or Stiers were simply remanded for resentencing or that the writ issued as to sentencing. But in general, isn't the usual remedy for ineffective assistance an appeal and new appeal? Yes, it is. Well, I think I misspoke. I'm not 100 percent certain that that's always the remedy, where there's ineffective assistance of counsel on direct appeal. In fact, I don't believe that that's actually correct. I think that, based on this Court's precedents, and it may be that the Court, the Court's Let me just, is it your position today that all we have in front of us is an IAC claim on this causal nexus issue? That's the, that's the vehicle that, that Mr. Sprites was, was forced to use to, to bring that to a court's attention, because the claim was defaulted by, by appellate counsel's failure to, to raise it in the areas of the Supreme Court. When I read the blue brief and the State's brief, and it looks, I realize that the IAC is, is, is raised, but they, but it's attacked as just a direct substantive causal nexus claim, like it's a freestanding, independent claim. Yeah, I, I don't disagree with that, Mr. Sprites. The way the briefing is done, that's, I mean, when I first read it, I thought we were just, you know, this is just a causal nexus claim. Well, I mean, I And when you look at it more carefully, and you, and you look at all the way it's structured, it was raised, it's tucked into an IAC ineffective, of appellate counsel claim. No, and, and, and you're absolutely correct about that. But at, at its core, it obviously is a, is a causal nexus claim. And the question is whether the Arizona State courts, and, and more specifically, whether the, the last reason judgments, which, which came out of the Arizona State post-conviction court, whether those, whether those, those were unreasonable applications of Federal law. You know, when, when the, when the ineffective assistance claim was denied in State court, the question is, did, did the State courts unreasonably apply the law to get to the point to, to, to The last, the last such case we've had, I think, is Poison. Is that right? Correct. And there's a pending petition for a hearing in that case. Correct. Would it be helpful, well, it would be helpful to me if you can compare that case to this one on the nexus question. First of all, is that a direct nexus question or an Yes. No, it's, it's a direct nexus question. But, but I think what's, what's important in Poison is that the sentencing court in Poison said, I go through three steps. When I have mitigation presented to me, Judge Berzani said, I go, I go through three steps. I, I look to see if there's proof by a preponderance that the mitigation exists. I weigh it as mitigation. That's set forth in the, I think it's at 711F3rd. It's in the Poison opinion, the panel opinion. And then, and then if, if it, if it is found, the court then goes ahead and factors it, factors it into the weighing of aggravating and mitigating circumstances to determine whether it's going to impose a sentence of death. The, in the panel opinion in Poison, of course, it's, it's, you know, Judge Thomas's dissent is very forceful. The, the panel, the panel said that it's not clear that, that the causal nexus test was, was employed as a screening test as opposed to a test for the, for the, the weighing of the evidence. And I think in light of the sentencing court's setting forth those three items were in, in, in, in the second part of the test, he says, I weigh it, I weigh the mitigation. I think that's the, I think that's what, what Judge Thomas and, and the majority of the panel are sort of wrestling with is, if, if the judge says that, does, does that trump the later pronouncements that the, that, that proffered mitigation has to have a causal nexus to the crime? That's, I think that's in a nutshell the. The court has to look at both, does it not? So the first thing, assuming that there is a preponderance of the evidence, and, and Mr. Sprites argued below, the G-1 statutory mitigating factor that his alcohol and drug abuse significantly impaired his ability to conform his conduct to law, so as to rise to the level of a mitigating factor. The court does that. Then if it decides, no, it doesn't meet that level, it then, why can't it employ the causal nexus test to decide, he doesn't meet the causal nexus, therefore, I'm going to consider as a nonstatutory mitigating factor, but give less weight to that same evidence. Isn't that what we have here? I would adopt everything you just said as what the judge should have said in this case, if that's what he meant. That's not what he says. Well, I guess what I'm asking is how can the Arizona Supreme Court do what you are saying it did not do without first looking at whether or not it rises to a statutory mitigator, and once it concludes it does not, which it clearly said, then applying the lack of causal nexus, give less weight to the nonstatutory mitigator. I think it can do that, but again, that's not the language the court used here, and respectfully, we submit that that's not what the court did. When the court said, when the Arizona Supreme Court said, the proffered mitigation is not essential to our decision, not essential to our decision, but those are not words that we death penalty lawyers hear in the trial courtroom with respect to how a court is weighing evidence, that's a statement by a court that, as a matter of law, it's not going to consider the evidence. And that's the – that's, I think, the distinction between this case, maybe, and maybe in Poison, and I wouldn't even concede that. Isn't a statutory mitigating factor essential in the sense that, if present, it can be deemed to outweigh a statutory aggravating factor? It can. So, again, I guess we're arguing semantics, but why can't I read not essential to mean it doesn't meet a statutory aggravating – a mitigator, but that doesn't necessarily mean it wasn't considered sort of in the background of all of the cumulative mitigation factors? Sotomayor, it summarizes the statutory and nonstatutory factors. It seems to go through the statutory and nonstatutory somewhat separately. It lists the factors. It says, A sentencing judge found as a mitigating circumstance that the defendant was raised in a subnormal home, but concluded, however, that the longstanding history of substance abuse was not a mitigating circumstance. That significantly impaired the ability. And there, there's no cite to the statutory claim. And then it says, In our independent re-weighing, we find the record provides no basis on which to alter the sentencing judge's decision, which seems to say, you know, we're doing it the same way he did. And in their own account, he didn't consider it. He didn't consider that, but he did consider the disruptive middle childhood. So essentially, they said that twice, that one of them is mitigating but not of little weight, and the other one is just not there. It seems to me, at least that's one way to read this. No, and I agree with you, Judge Berzon. I think if the judge meant to say that he gave any mitigating weight at all to the proffered mitigation of history of substance abuse and alcohol abuse, I think he would have said it, because he said you're right, he said it as to the other factors. He didn't say it as to this one, but as I said with respect to the question that Judge Tallman asked, I think the use of the term not essential to our decision is not, that's not the vernacular that's used in the trial courtroom, or it's not even used by the Arizona Supreme Court in assessing weight. There's no discussion of weight. There's no discussion of the sympathy or empathy that the evidence would invoke. I think if the judge had said, I considered his history of alcohol and substance abuse, and I find, and I'm sympathetic to it, but I don't find that it's sufficient with the other mitigation to outweigh the aggravating factors, we wouldn't be in front of the court right now. I think the problem is the court clearly didn't consider, the sentencing court didn't consider that. The State Supreme Court said, we don't consider this proffered non-statutory mitigation because it's not part of our calculus, and that was true historically at the time, not just in Mr. Spritz's case, but this Court is aware, this Court has been in panels where the historical practice of the Arizona Supreme Court has been set forth. And so it was a longstanding practice. And the post-conviction court, when it said that the non-statutory mitigation was inconsequential, he said, for the reasons the trial court and the State Supreme Court said in their respective orders. Well, why would anybody think different? Now, that's exactly what the state of the law was. In a supplemental excerpt of record, I indicated to the Court what Ms. Gard's predecessor on this case, Mr. Anderson, cited to the State Supreme Court. And he said, he said, he counseled the Arizona Supreme Court to deny review from the denial of post-conviction relief on this issue precisely because of the absence of a nexus requirement. These courts, the parties in this litigation understood exactly what was, you know, what was going on here with respect to whether there was going to be an application of a causal nexus in this case. I think the State got, for many years, the State got what it asked for. It was expedient in getting death sentences imposed and then affirmed to argue the causal nexus. And they were successful in getting sentencing courts to impose death. The cases have been before this Court. And then when the cases went up on appeal, the Arizona Supreme Court and its so-called independent review went ahead and affirmed and found that there was no causal nexus. So I think this is a case where, you know, the State, the State banked on a continuation of the interpretation of the case law that endured in the 1990s in the state of Arizona. And I think the, when the U.S. Supreme Court decided Smith and Sinard in 2004, it sent the state courts in Arizona reeling. And this Court is aware that there have been changes in the Arizona practice to reflect that this is, this is now a, a, a, a, the causal nexus is now used to weigh evidence. And one of the things that's disturbing here, obviously, is it all seems fairly semantic, but have the semantics, in fact, changed recently? Well, the big difference, of course, is after Ring, juries are now imposing sentences in Arizona, so they're getting instructions that say they have to give weight to the non-statutory mitigating factors. Now, on your view that we would have a reversal on a new sentencing hearing, wouldn't it go to a jury? I assume it would. Yes, it would. Mr. Gabelson, we spent all our time, allotted time on the nexus issue, and you had a number of other issues. I'm willing to give you a few minutes if you have one or two other points you want to make. Well, I, I, in, in, in March, we filed what we have come to call a Martinez Motion, and that's a claim of ineffective assistance of post-convict, post-conviction counsel that would serve as cause and prejudice to excuse the failure of the State trial attorney, the State court trial attorney, to fully investigate the history of the physical abuse of, of, of Mr. Sprites by his mother and father. That was not fully developed. The, the parties, there's some argument in the briefs as to that. And then it's just, you know, it's different on the merit. Really, what I understand your motion to be is that it was a default on the factual development. That's, that's correct. And, and we cite, we cite cases, we cite the district court order in this case. That's... But the district court order in this case did consider this information, right? It considered, it considered the issue, but it also informed the parties that, ahead of time that, that exhaustion requires exhaustions, not only, not only exhaustion of the federal claim, but also of the facts that support that claim. This court is aware at this point, after the, the remands in Running Eagle and in the George Lopez case, that cases are being remanded where our argument, the argument on our side, the petitioner side in these cases, is that the facts were not exhausted. And yes, while the district court, you know, ruled, or the state courts ruled rather, on the, on the ineffective assistance of trial counsel claim, they did so on an incomplete record. And, and the case, we posit... Sotomayor, the district, to the district, there was evidence introduced in the federal habeas, right? Which is the same evidence that you're worried about as having been defaulted. Is that right? No, that's not correct, Your Honor. The... There's more evidence? Oh, absolutely. There's more evidence. The, the severity of the beatings was not revealed in the state post-conviction investigation. No, no, I'm talking about the federal habeas. The federal habeas. Oh, the federal habeas. Your Honor, there are... There was additional evidence. There was additional evidence, and it came from a, an alcohol specialist, Dr. Matthew. It came from a neuropsychologist, Dr. Sullivan. The physical abuse evidence was not, was not perfected to the, to, to the extent that, that our investigation has, has found. And that's where it's, where the, the original sentencing court was not aware. Dr. Flynn, who tested, I guess the major crux of our argument...  I'm not arguing... The way we just had a non-bank argument in Dickens, and some of this was vetted, and at least in that case, the, the fulcrum issue was, is this a new claim? And if it's a new claim, then, at least the question is that do we then therefore say it's a defaulted new claim and you can deal with it under Martinez? But you're not arguing this is a new claim, is that right? Well, we, we are, we are arguing that it, it, it, it's unexhausted for Martinez' purposes because the facts were never fully developed. But not that it's sufficiently different from what went on before, that, that in the old world, it would have been a new claim? Correct. I think that... Not, not that. Correct. I, I think it's a, it's a, it's a, it's a claim of the... Somewhere in the middle. It's, it's essentially... Well, as, as many of these cases are, Your Honor, and, and the Court's aware of that. As I said, in Running Eagle and in, in Lopez, anyway, maybe in Dickens... Besides anything they just remanded. Your, Your Honor's, Your Honor's have a lot to sift through because these cases come with different combinations and permutations, but this question about whether Martinez applies to defaulted facts as opposed to defaulted claims... Well, I, I, the, the question, the problem is that, I mean, there's this whole sort of running into pinholster problem, which I, you know, on one level, to me, the answer is, well, if, if there was ineffective assistance, then it's not clear to me pinholster applies anyway. But, but still, the, usually one talks about defaulting a claim, not some facts. I mean, before all this, before Martinez, right? I mean, that, that's the, the way it's always been. The whole concept of procedural default has been applied. Well, I, I think that's right, and, and maybe we were all, maybe practitioners and the courts were a little bit cavalier about not differentiating. But in every, every habeas case that I get in the District of Arizona, the U.S. District Court sets forth an order as to what the claims need to include. That includes a statement of the federal constitutional claim and all supporting facts, the orders to counsel saying when and how motions for evidentiary development are going to take place. Those also have to include a statement of what the claim is and what the facts are that, that, that counsel hopes to improve by his, by his, the discovery or the investigation he proposes to do. So I think, while I, I agree with you on some level, we used to just talk about these as, as exhausted or unexhausted claims. I think the practice now is why is it that you don't want to characterize it as a new claim? Is there some procedural reason that's precluded? I mean, for example, the, the set of issues around his, his head injuries. I mean, why couldn't one call that a new claim? Well, I, if I were pressed, I, I would say that it's a new claim. What, what, what tempers this, of course, is that there's a, there's a one-year statute of limitations under the AEDPA for raising claims. And so if, if my predecessor counsel on this case, for example, had not pleaded even an unexhausted ineffective assistance claim based on the failure to investigate the, the full spectrum of the physical abuse, the, the case would run into problems later. That does lead to a kind of mirrored mess, because if you're, you're claiming that you can have unexhausted facts that aren't a new claim and therefore aren't subject to AEDPA, then to the AEDPA limitations period, then what? You're going to go back and exhaust the unexhausted facts, but, but it's not going to be part of, it's not going to stop the clock on AEDPA? Well, and, and I, I, I agree, and I understand your question probably is rhetorical. I, I think that Martinez announced an equitable remedy, and I think equity should extend. My own view is that equity should extend to, to these Petitioners being able to take those, that cause and prejudice that they've been able to establish and get those claims back in front of the Federal courts, because I think, I think equity. Not to exhaust them in State court. Correct. Yeah.  But it's a fault of it. I'll read it out. Well, Martinez itself said that. We're not telling the State courts they even have to provide a second opportunity for post-conviction relief. We're just telling you what happens in Federal court if you don't, and that is that there's cause and prejudice to excuse the procedural default. I mean, in fact, Arizona has, has refused to do Martinez, hasn't it? I, I don't know if they've refused, Your Honor. I don't, I don't know of any bills pending. It hasn't. No, no. I mean, it came up in — They haven't done anything, and I know Judge Kuzinski asks — It came up in Dickens, and we have gotten filings recently of opinions in which they have refused to do it. Correct. I, yeah, I, I watched the Dickens. I know Judge Kuzinski was very interested in whether, why, why doesn't Arizona just enact something to alleviate this problem? And since then, we have gotten several filings of cases in which this was raised in Arizona. Courts have refused to do it. Okay. Mr. Gabelson, thank you. Pius, thank you. We'll hear from the State. May it please the Court, counsel. My name is Lacy Gard. I'm from the Arizona Attorney General's Office, and I represent the respondents in this matter. I'll begin with the causal nexus issue, since it seems that the Court has some concern about that issue. And to clarify, and I apologize for any ambiguity in the briefing, I will agree that the reply brief, the supplemental reply on this issue did seem to present an Eighth Amendment claim. But the only claim before this Court is an ineffective assistance of appellate counsel claim. That is Uncertified Issue 4. That was what was presented in the opening brief. And that is what, at least, I intended to respond to in the supplemental answering brief. This is a claim that is governed by the State. Well, they label it. I mean, that's how it's labeled in the – that's how that fourth uncertified claim is labeled. The first sentence out, when you get into it, it's all about the Arizona Supreme Court. That's correct. And the – And when you come – and that's the way it's dealt with. Right. And part of the reason for that, Judge, is because to consider an ineffective assistance of appellate counsel claim necessarily requires consideration of the merits that the petitioner is alleging that appellate counsel should have presented. In other words, in this particular case, the claim is that appellate counsel should have raised this Eddings claim on appeal. So in part of the prejudice analysis, we have to consider what was the merit to the Eddings claim. This Court's analysis is governed by both AEDPA and Strickland. So when looking at the State court's resolution of the ineffective assistance of counsel claim, there's two levels of deference that apply. Well, yeah. No, I understand that. But there's no – there's no question here that this causal nexus claim was duly presented to the Arizona courts. On post-conviction. Yes. Yes. Yes. And post-conviction is where it seems they were clearest about this – the lack of nexus problem. They were really clear. The post-conviction court. You mean to – you think that the problem is with the post-conviction ruling, or? No. I'm saying that the post-conviction ruling seemed to me to be pretty quite clear about the fact that they were – it was applying a nexus requirement. Let me see if I can find it. Why don't you go on and I'll see if I can find it. I disagree with that, Your Honor. And the reason I disagree with that is I think that Mr. Gabrielson and I perhaps disagree on the significance of the court's use of the word inconsequential here. And the word went – the word in the California – in the Arizona Supreme Court was essential, not inconsequential. Essential. I'm sorry. I thought we were talking about the post-conviction ruling. Okay. In the post-conviction court, in rejecting the ineffective assistance claim, the defendant stated that – and I apologize, I can't find the precise reference to the excerpts – but stated that without explaining Sparks's behavior at the time of the offense, his history of alcohol or substance abuse would be inconsequential. That is a statement of weight. That's not a statement that it can't be considered. It's a statement that it is of no consequence in the grand scheme of things because there's no causal nexus. In the post-conviction trial court, Petitioner once again argues that trial counsel was ineffective for a failure to present available evidence of Petitioner's intoxication at the time of the offense. Should have presented such evidence at the time of the sentencing, there was more than sufficient evidence. However, such evidence did not qualify as a mitigating factor. Then they argue that it was ineffective in – which is the language that you are talking about? Where is the inconsequential language from? I apologize, Your Honor. I just got my copy with the excerpt numbers on it. The inconsequential, it's on Excerpts of Record 381. It's the first paragraph there, about near the end, about halfway down. Without some basis for explaining or defining the individual's behavior, the Petitioner's history of alcohol or substance abuse would be inconsequential. And then, and I understand that the Court is concerned about the statement in the next line about, at times, the court can and should consider mitigation. At most, when viewed in connection with the line above, this is ambiguous. And under Poisson? I mean, you have to read the whole paragraph. He first says that the issue is waived because he didn't raise it on – Correct. And then he says – Well – Then he says, even so, it must be demonstrated under the statute that there is a causal link between the history of alcohol or substance abuse and the offense itself. Without some basis for explaining or defining the individual's behavior at the time in the offense. And then he goes on in the next paragraph to be absolutely lucid about it. At times, the court can and should consider the individual's long-term alcohol and substance abuse, usually in conjunction with other factors. As non-statutory mitigation, however, the impact or effect of the alcoholism or substance abuse must be substantial and of such severity that it provides a sufficient basis for explaining the defendant's conduct, character, or ability to control his behavior at the time of the offense. So, I mean, that's just absolutely clear. Well, again, I disagree with you, Judge. I disagree because of that statement before about how this is inconsequential. This is all going to wait. At most, this is a situation like in Poisson where we can't tell if there are – maybe they are applying a causal nexus test, but the record is susceptible of two interpretations. And the other point I want to make on this topic is that – At some point, don't we have to read this as ordinary English, as an ordinary person would read an ordinary thing? Well, I think – I think that reading it in ordinary English, my position is that inconsequential, it goes to wait, and that that – But there's – there are two more sentences that you're ignoring. If we're going to do that, why shouldn't we start at the bottom of 381 where the court concludes, as previously discussed, there is no evidence in Petitioner's case to suggest that he suffered any long-term effects from his alcohol or drug abuse that precluded him from controlling his behavior. Petitioner did not suffer from any cognitive or emotional deficits that rendered him incapable of controlling his conduct. Therefore, the trial court did not err in failing to find Petitioner's history of alcohol or substance abuse as a separate non-statutory mitigating factor. I don't understand if we're going to apply plain English as a test. That clearly says I'm considering it, but I don't give it any weight as a non-statutory factor. And that's permissible, to consider it and not to give it any weight. And if that's what this court finds that the trial court did, and I think that's a reasonable interpretation of that statement, that is constitutionally permissible under Eddings. That's not an Eddings violation. The other ---- How does the ñ from your perspective, how does the post-conviction court's ruling here fit into the analysis? Right. It seems to me that under ñ that the post-conviction court initially found all of these claims precluded, these ineffective assistance claims, which was set aside by the Arizona Supreme Court. In the Arizona Supreme Court's opinion, the Arizona Supreme Court affirmed ñ the Court said in paragraph 10 of the opinion at 39p3-525, the trial court alternatively addressed the merits of the ineffectiveness claims and reaffirmed those findings. There was no abuse of discretion in the trial court's determination of the substantive issues. So it seems to me that the Arizona Supreme Court opinion under ñ under Richter and Johnson v. Williams, that this is also a merits decision as well. And because it is unexplained, this Court, when it reviews the decision or it reviews the ineffective assistance claim, has to entertain all possibilities why that claim could have been correctly rejected. And ñ So do we look through to the ñ to the PCR court's ruling? I don't know that you need to look through to it. I don't know. I think you ñ I think it's wide open for consideration, and I think that Richter requires that the level of deference that Richter and Strickland combine require this Court to, as stated in Pinholster, consider any possible conceivable scenario under which this was the correct ruling. I'm sorry. Did you have a question? Roberts. Okay. Go ahead. Okay. And with respect to the issue of Strickland prejudice, I did want to address that briefly as well. Of course, the main question in terms of Strickland prejudice is if counsel had raised this claim, would it have resulted in a different ñ in a different outcome on appeal? And of course, the fact that the Arizona Supreme Court conducted an independent reviewing, an independent reweighing, considered all of the mitigation, takes care of that concern. But on top of that, we know from Henry and other cases that this Court has recently decided that this Court may consider what the outcome would have been had weight been given to this evidence, assuming that weight was not, which is not my position, or had the evidence been considered, I should say. And in this particular case, in light of cruelty, the cruelty of this murder, there would have been no difference in the outcome in the sentencing calculus. The State courts found, the Supreme Court found, and the sentencing court found the history of substance abuse. It's difficult to see how, given that they did find no causal nexus, and that does go to weight, how it would have tipped the balance in light of what happened to this woman being kidnapped, and the trial court did find that she was kidnapped and placed in the trunk of a car and driven out into the desert, where she was beaten and raped and ultimately murdered. And we know the terror that she experienced because she had defecated on her clothing, and there's – it's a very gruesome, gruesome murder. So that's also relevant to the prejudice analysis. But the bottom line is that under AEDPA and under Strickland, this claim is worthy of substantial deference. There was a – Mr. Gabrielson discussed at length the use of the conjunctive adverb in Stiers, and I wanted to just address that briefly, because it seems like under Mr. Gabrielson's position that whenever a court uses the word however, it's automatically it's imposing a causal nexus. But the difference between – well, there's actually a huge fundamental difference between this case and Stiers, being that Stiers was a review of the Eighth Amendment claim. It wasn't a Strickland claim, so it was an AEDPA review, but it was not AEDPA plus Strickland. It didn't have that extra deference. The difference with Stiers in this case is that in Stiers, the court stated that – I think it was PTSD at issue. PTSD could, in an appropriate case, be mitigation, and then said however, and then explained why this case lacked a causal nexus. That's not what happened here. That's not what happened here at all. The court used the word however in terms of describing, first of all, making the finding that there was a history of substance abuse, and it did make that finding, which suggests – not just suggests, shows that the evidence was considered as is constitutionally required, and then just said however, I don't find that this is a mitigating circumstance because of the lack of a causal nexus. If the Court had no further questions on that issue, I'll move to the Martinez issue. Ms. Clark. Okay. Both of the claims for which Mr. Gabrielson seeks a remand, and I'll refer to them as the child abuse claim and the substance abuse claim, were resolved on the merits in State court. AEDPA applies to those cases. Or those claims. Penholster applies to those claims. And I think I briefed adequately. I don't want to waive my position here that claim 5 or the child abuse claim is not properly before this Court because it was not included in the opening brief. Mr. Bruner elected not to raise that claim. Mr. Gabrielson has conceded, and I believe it's the Martinez reply, that he can't show strickland prejudice on that claim on the State court record. I don't think that claim is really at issue, but assuming it is, that claim was resolved on the merits in State court. The other claim was about this was a claim that counsel was ineffective for failing to present evidence of child abuse, sufficient evidence of child abuse. At some point, to me, this is the line between, you know, at what point is there sufficient additional evidence that it's a different claim, essentially, or at least whatever we call it, that it was a default of significance that can't be reached here. It's that overlap. There was this recent dissent from denial of certiorari by Judge Justice Breyer, which kind of touches on some of this. Correct. And then in Penholster, I think the Court also dropped a footnote saying they weren't going to decide what the line is between an adjudicated claim and an unadjudicated claim. I would submit that because Penholster says that new evidence simply can't be considered in State court, you can't. Yes, but Penholster was not. There were two things about Penholster. First of all, if it is a new claim, then it seems Penholster is entirely nonrelevant, because Penholster is only about whether or not you – a claim that under 2254 g)(1 that was decided is to be treated on AEDPA. If it's a new claim and it wasn't decided, then the whole thing doesn't apply, right? If there is a brand-new claim that was never presented in State court, then it's not a claim. So that – so one way of looking at it is, is this a sufficiently different claim? That's one way of looking at it. And it's – you seem to be saying, well, if its name is the same, it's the same, as opposed to whether it's sufficiently different, then it would have to be re-exhausted anyway. My position is that new evidence – the body of case law – and this was addressed a little bit in the Dickens argument, en banc argument, actually a lot in the Dickens en banc argument, and presumably will be resolved in some fashion. But the prior body of case law where a claim could be fundamentally changed in State or in Federal court by new evidence, such to render it unexhausted, likely does not survive Penholster. But if it – regardless of that, in this particular case, that – this is not the case to try to find out where that line is, because the new evidence that was presented in Federal court on – on both of these claims, and I would – I would note that some of the new evidence was presented for the first time in connection with the Martinez reply, some new affidavits, but overall, the new evidence that was presented in Federal court in this claim, or in both of these claims, was not such that it fundamentally altered them. It didn't make them into a different claim. It was simply amplifying evidence of a claim that was already presented and exhausted and rejected on the merits. Therefore, it's not properly considered. Now, the district court did consider the evidence that was brought for Dr. Matthews' report, but that was prior to Penholster. That analysis was incorrect. In retrospect, this Court should not consider that evidence under Penholster. So you think that Judge Rohl issued – or erred in holding the hearing itself? Is that what you're saying? Well, there was no hearing. It was – Well, okay. He received the affidavits and – He augmented the records. Yeah. I mean, he took evidence. He did take evidence. And at the time, it was prior to Penholster. So he didn't – he didn't err, per se, but it turns out – But he didn't have the benefit of the Supreme Court's later decision in Penholster. Correct. He didn't have the benefit of Penholster, but this Court in its review, it's – David   And so I think that the Supreme Court's claim of having an overview of the habeas denial should exclude that evidence in considering those claims. Let me ask you, if – let's go back to the nexus issue for just a moment. When I asked counsel about what the remedy would be, he said a new hearing, a new sentencing hearing. What's your view? Certainly not a new sentencing hearing. Why not? Well, because the alleged error happened on appeal. And my recollection of Stiers, and perhaps I am misremembering Stiers, and if I am, then I will certainly correct myself, but my recollection is that when the writ was granted in Stiers, it went back to the Arizona Supreme Court for a new reweighing, and that would seem to be the correct course of action. It certainly – there's no reason to give a new sentencing when the alleged error happened during the appellate proceedings. The Arizona Supreme Court could simply correct that error. And if the Arizona Supreme Court found, you know, found it necessary, it could order a new sentencing or it could simply do a correct weighing. It could. Okay. If the Court has no further questions, I would just conclude by stating that this is not the case, that the vast majority of the claims before this Court – Can I just go back once more to the Nexus thing? I'm keeping baffled by the procedural set-up here. But as I understand it, in the PCR trial court, the ineffective assistance of appellate counsel was – with regard to Nexus was raised. Yes. Okay. And the PCR court decided – and I understand you disagree, but suppose I thought that the PCR court's characterization of what had happened makes lucidly clear that, in fact, they didn't have to consider this factor as mitigating. Is that the governing Arizona case that I now look at to decide what rule was actually applied? I think you can look at the Arizona Supreme Court's opinion because it reached the merits of that claim. Well, I understand that. But if what we're looking at is the IAC claim, and the last reason Arizona decision as to that was this PCR ruling, and moreover, the PCR ruling is the Arizona State's interpretation of what happened in this case. Why don't we just look at that? Why are we looking one level back? Well, I think that – I think – again, I'm coming back again to deference. And I think that even if you just look at the PCR decision, I think that you still should entertain all possibilities, all potential arguments that this decision was correct. But I was asking you a more discrete kind of technical question. Which is the opinion I should be looking at? I suggest it's the Arizona Supreme Court opinion. But why? Because it reached the merits of that claim. And even though it didn't specifically address that claim, it's still a merits ruling under Richter and under Johnson v. Williams. And I think that comedy and that interest of federalism would require this court to afford the deference that would be afforded to – that should be afforded to a State court decision. Well, the IAC claim wasn't presented to the Arizona Supreme Court. All of the claims were presented. The preclusion ruling was challenged? No, on direct appeal it wasn't presented. Oh, on direct appeal. I'm sorry. The first – the Arizona Supreme Court. Oh, the first – the first – On direct appeal. There was no IAC right there. No, there was no IAC. I'm sorry. It makes no sense. I apologize. I was referring to that second Arizona Supreme Court. You're referring to the second Arizona Supreme Court? Yes. Yes. The second Arizona Supreme Court. Well, that says – all that opinion says is they adopt the reasoning of the – they affirm the reasoning of the PCR court. They said they affirm the reasoning, find no abuse of discretion in that reasoning, but don't say that they – they don't say – they don't just – they don't adopt the reasoning of it. They affirm those. Well, they don't offer any explanation. But then we have to split – then we have a look-through rule. So it seems to me the key opinion here is that trial PCR claim. And, again, if the – if this Court disagrees with me and concludes that, again, I would submit that the PCR court was not applying a weighing or applying a causal nexus screening test. It was using a weighing test, which is constitutionally permissible. If the Court has no further questions? No. I don't have any more. Thank you. I just conclude by encouraging this Court to see a – Well, I do have one more question, which is related to the nexus thing, and I – sort of what I asked before. We have poison. Poison is pending on bank. I don't have an idea whether it's going to go on bank. Is there enough relationship on the nexus issue between that case and this one that we ought to be suspending the decision on this case? Pending the decision on the en banc? The question of whether to go on bank and then if it does go on bank, pending on the en banc. And there have been so many of these cases kicking around now, and we – and we seem to be having somewhat dueling opinions, the truth is, in terms of how we read these cases. And I think it's important for us to look at the Arizona Supreme Court opinions or Arizona opinions. And, you know, it's fine to say we read each one independently, but at some point you start looking pretty silly reading each one independently because they're not really independent of each other. The Arizona courts, we're considering, you know, have some doctrine they're applying. Right. So why shouldn't we see if we can get this all straightened out at once? Are you asking should I – do I object to this? I'm asking, yes, should we in this case simply put this case on ice, and so it happens to Poison? I would have no objection to that. That would be reasonable. Of course, we don't know, as Your Honor said, we don't know. But Poison doesn't arise in the context of an IAC claim, is that correct? That's correct, and I apologize. I'm going to have to retract what I just said, is that that's correct. Poison is a – is a Eighth Amendment. Correct. I mean, direct. Restanding Eighth Amendment claim. Yeah. Yeah, yeah, yeah. So, yes, I would – I would retract what I just said, and I think that this case can be resolved, given the Strickland, the applicability of Strickland. And I apologize, I was confused on the record there. Okay. In closing, I would just encourage this Court to – to recognize that all these claims have been resolved by the State courts on the merits. They are entitled to – to deference. They are entitled – the defendant's burden to have that – those decisions overcome is very high. It's a difficult standard to meet and was intended to be a difficult standard to meet. And with that, I would encourage this Court to deny habeas relief. Thank you. Thank you, counsel. I'll give you a minute for rebuttal, because we're – I gave you some extra time. You were very gracious, Judge Pius. I appreciate it. In the – with regard to prejudice on the – on causal nexus, the – and, Judge Berzon, I think you were part of the panel in Arion Williams. That case, the writ – the writ was ordered granted in that case. The case was sent back and – for resentencing. Out of a duty of candor to the Court, while I was sitting there, I reread the end of Stiers, and Stiers indicated that the writ should issue unless the Arizona courts correct the error. That may or may not give them – and they may choose not to correct the error. I guess what appeals to me about that suggestion is that the error that is alleged is alleged to have been made by a court that has the authority on de novo review to review the same sentencing evidence that was before the superior court and then the aggravators outweigh the mitigators or vice versa. So I'm not sure that a whole new sentencing, a penalty-phase sentencing proceeding with new evidence and new witnesses is necessary to correct the error. I'm going to presume that you're asking me to respond to your – to your statement. I think – Maybe it was a rhetorical question. Yes, Your Honor. I forget that way, but – I could respond to my rhetorical question. But I think you raise a good point, but let me posit this. You know, Mr. Sprites was sentenced by a judge prior to – prior to Ring. In Summerlin, he lost the benefit of that resentencing with a jury. With whatever sensibilities a jury of 12 people bring to the decision, would I prefer – and should the law, where such an egregious violation has occurred, that a whole category of non-statutory mitigating evidence is not being considered by the Arizona courts, should he be stuck with a review in front of a court that may have an interest in upholding their prior actions in this case? But doesn't the court do that even with a jury verdict of death now? Doesn't it still have an independent obligation to review the record of the jury? No, they've actually – I think they've done away with the independent review in Arizona. But they don't do that anymore? No, sir. Oh, okay. All right. I mean, if it did – if it were to go back to the Arizona Supreme Court, they could send it back down for a new sentencing hearing. That's correct. Sure. And I think – I think there's – when the Ring reversals came out, I think Didn't they send a batch of cases? Well, there were – I think there were 22 or something cases affected by Ring, and I think in only two cases did they uphold on harmless air grounds the sentence imposed, and I think 20 cases were sent back. I think the case ought to be sent back for the reasons I stated. Okay. Thank you, Judge. Thank you, counsel. Thank you, counsel, both of you very much. We appreciate your arguments very much so. Matter submitted.
judges: Paez, Berzon, Tallman